Law Offices of
MATTHEW C. MICKELSON
MATTHEW C. MICKELSON, ESQUIRE, BAR NO. 203867
16055 Ventura Boulevard
Suite 1230
Encino, California 91436-2602
Tel:   (818) 382-3360
Fax:   (818) 382-3364
E-mail: mattmickelson@bizla.rr.com
Attorneys for Plaintiff, MILOS (1989) LTD.

FILED
E-FILING
2008 APR 23 A 10:56
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

Fee Paid
S1
①

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MILOS (1989) LTD., an Israeli corporation, )
                                            )   CASE NO. C08 02109 PVT
                                            )
                                            )   COMPLAINT FOR MONEY, OPEN
                                            )   BOOK ACCOUNT, ACCOUNT STATED
                                            )   GOODS SOLD AND DELIVERED/
            Plaintiff,                      )   TENDERED, BREACH OF CONTRACT
                                            )
v.                                          )
                                            )
SUNOPTA GLOBAL ORGANIC                      )
INGREDIENTS, INC., a California             )
corporation,                                )
                                            )
            Defendant.                      )
_____)

Plaintiff alleges:

1.  Plaintiff MILOS (1989) LTD. (hereinafter "MILOS") is, and at all times herein mentioned was, a Corporation organized and existing under the laws of Israel with its principal place of business at Mobile Post Western Galilee 22821, Israel.

2.  Defendant SUNOPTA GLOBAL ORGANIC INGREDIENTS, INC. (hereinafter "OI") is a Corporation organized and existing under the laws of California with its principal place of business at 335 Spreckels Drive, Ste. F, Aptos, California 95003.

3.  Jurisdiction. The jurisdiction of this Court over the subject matter of this

1  action is predicated on 28 U.S.C. Section 1332. The Plaintiff is a citizen of Israel. The
2  Defendant is a citizen of California. The amount in controversy exceeds $75,000, exclusive of
3  interest and costs.

4.  Venue. Venue is proper in this District in that the Defendant is subject to personal jurisdiction in this District at the time the action is commenced, and there is no district in which the action may be otherwise brought.

5.  Intradistrict Assignment. A substantial part of the events and omissions which gave rise to the claims alleged in this Complaint – the breach of contract, failure to pay on an open book account, failure to pay on an account stated, and failure to pay for goods had and received/tendered – occurred in Santa Cruz county, and accordingly assignment to the San Jose Division is warranted.

## FIRST CLAIM
## OPEN BOOK ACCOUNT

6.  Plaintiff re-alleges paragraphs 1 through 5 inclusive of the Complaint, and by reference thereto, incorporates the same as though fully set forth herein.

7.  Within four years last past, Defendant became indebted to MILOS on an open book account for money due in a sum totaling $174,644.58 for organic food products prepared for and tendered to Defendant.

8.  Neither the whole nor any part of said sum has been paid, although demand therefore has been made, and there is now due, owing and unpaid from the Defendants, to Plaintiff, a sum totaling $174,644.58, together with interest thereon at the legal rate from June 24, 2007.

## SECOND CLAIM
## ACCOUNT STATED

9.  Plaintiff re-alleges paragraphs 1 through 8 inclusive of the Complaint, and by reference thereto, incorporates the same as though fully set forth herein.

10. Within four years last past, an account was stated in writing by and between MILOS and the Defendant wherein it was agreed that Defendants was indebted to MILOS in a

sum totaling $174,644.58 for organic food products prepared at the special instance and request of Defendant, and such organic food products were tendered to Defendant.

11. Neither the whole nor any part of said sum has been paid, although demand therefore has been made, and there is now due, owing and unpaid from the Defendant, to Plaintiff, a sum totaling $174,644.58, together with interest thereon at the legal rate from June 24, 2007.

## THIRD CLAIM
### GOODS SOLD AND DELIVERED/TENDERED

12. Plaintiff realleges Paragraphs 1 through 11 inclusive of the Complaint, and by reference thereto, incorporates the same as though fully set forth herein.

13. Within two years last past, Defendant became indebted to Plaintiff in a sum totaling $174,644.58 for goods sold and delivered/tendered to Defendant.

14. Neither the whole nor any part of said sum has been paid, although demand therefore has been made, and there is now due, owing, and unpaid from the Defendants, and each of them, to Plaintiff, a sum totaling $174,644.58, together with interest thereon at the legal rate from June 24, 2007.

## FOURTH CLAIM
### BREACH OF CONTRACT

15. Plaintiff re-alleges paragraphs 1 through 14 inclusive of the Complaint, and by reference thereto, incorporates the same as though fully set forth herein.

16. On or about February 16, 2006, MILOS and Defendant entered into a written Agreement whereby MILOS sold and delivered and/or tendered to Defendant organic food products in return for payment from Defendant. A true and correct copy of the Agreement is attached hereto as Exhibit "1."

17. Section 1(c) of the Agreement provides that Defendant shall make payments to MILOS for product delivered within ten days from the date such products clear U.S. ports.

18. MILOS has performed all conditions, covenants and promises required of it in accordance with the terms and conditions of said Agreement.

19. On or about April 12, 2007, Defendant breached said Agreement by failing to make payment to MILOS as provided for in said Agreement after tender of the food products from MILOS to Defendant.

20. Paragraph 17 of said Agreement requires the non-breaching party to provide notice of breach, after which point the breaching party shall have 30 days to cure such breach. MILOS, through its counsel, provided such notice on March 11, 2008. Defendant did not cure its breach within 30 days.

21. Paragraph 22 of said Agreement provides that "[i]f either party to this agreement undertakes litigation . . . against the other party arising out of or in connection with this agreement, the successful or prevailing party or parties will be entitled to recover from the other party . . . reasonable attorney's fees . . . and court costs incurred."

22. As a result of the breach of said Agreement by Defendant, MILOS has been damaged in a sum totaling $174,644.58, together with interest thereon from April 12, 2007, along with costs and reasonable attorney's fees incurred in legal proceedings to collect the amount due.

WHEREFORE, Plaintiff prays judgment against the Defendant, as follows:

FOR THE FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS:

1. For the principal, in a sum totaling $174,644.58;
2. For reasonable costs and for interest thereon at the legal rate and according to proof from June 24, 2007;
3. For attorneys' fees pursuant to California Civil Code Section 1717.5;

FOR THE SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS:

1. For the principal, in a sum totaling $174,644.58;
2. For reasonable costs and for interest thereon at the legal rate and according to proof from June 24, 2007;

<u>FOR THE THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS</u>:

1. For the principal, in a sum totaling $174,644.58;
2. For reasonable costs and for interest thereon at the legal rate and according to proof from June 24, 2007;

<u>FOR THE FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS</u>:

1. For the principal, in a sum totaling $174,644.58;
2. For interest thereon at the legal rate and according to proof from April 12, 2007;
3. For incidental damages under California Commercial Code section 2710, the exact amount of which has yet to be ascertained;.
3. For reasonable costs of litigation and attorney's fees as provided by paragraph 22 of the Agreement.

<u>FOR ALL CAUSES OF ACTION</u>:

1. For costs of suit incurred herein;
2. For reasonable attorneys' fees; and
3. For such other and further relief as this Court may deem just and proper.

DATED: April 16, 2008

LAW OFFICES OF
MATTHEW C. MICKELSON

By_____
MATTHEW C. MICKELSON
Attorney for Plaintiff,
MILOS (1989) LTD.
E-mail: mattmickelson@bizla.rr.com

Law Offices of
MATTHEW C. MICKELSON
MATTHEW C. MICKELSON, ESQUIRE, BAR NO. 203867
16055 Ventura Boulevard
Suite 1230
Encino, California 91436-2602
Tel:   (818) 382-3360
Fax:   (818) 382-3364
E-mail: mattmickelson@bizla.rr.com
Attorneys for Plaintiff, MILOS (1989) LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MILOS (1989) LTD., an Israeli corporation,<br><br>  Plaintiff,<br><br>v.<br><br>SUNOPTA GLOBAL ORGANIC INGREDIENTS, INC., a California corporation,<br><br>  Defendant. | CASE NO.<br><br>CORPORATE PARTY DISCLOSURE STATEMENT AND DISCLOSURE OF NON-PARTY INTERESTED ENTITIES AND PERSONS<br>(F.R.C.P. 7.1; Local Rule 3-16.) |

    Pursuant to Federal Rule of Court 7.1, Plaintiff Milos (1989) Ltd. certifies as follows: Plaintiff Milos (1989) Corporation has a parent corporation, Bogofan Ltd. No other publicly-traded corporation other than Bogofan Ltd. owns 10 percent or more of Milos (1989) Ltd.'s stock.

    Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the

1 | proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be
2 | substantially affected by the outcome of this proceeding: Bogofan Ltd..

3 | DATED:

LAW OFFICES OF
MATTHEW C. MICKELSON

By_____
MATTHEW C. MICKELSON
Attorney for Plaintiff,
MILOS (1989) LTD.
E-mail: mattmickelson@bizla.rr.com

**EXHIBIT 1**

## PACKING/ PROCESSING & MARKETING AGREEMENT

This Agreement (the "Agreement"), effective this 16 day of Feb, 2006, is by and between **Organic Ingredients, Inc.**, a California Corporation, with offices at 335 Spreckels Dr., Suite F, Aptos, CA 95003 ("OI"), and **Milos**, an Israeli private company, with offices at Western Galilee, Israel, (mobile post 22821) ("Milos").

### Recital

OI and Milos mutually desire that Milos produce, process, and pack for OI the organic food products described on **EXHIBIT "A"** attached hereto and incorporated herein by this reference (the "**Organic Products**"). OI desires to manage the sale of all Organic Products, to act as Milos' sole and exclusive marketing agent for the Organic Products within the United States and Canada, and to compensate Milos for its production, packing, and processing services within the agreed upon terms.

NOW, THEREFORE, in consideration of the foregoing Recital and other good and valuable consideration as set forth herein, OI and Milos do hereby agree as follows:

### AGREEMENT

1. *Production, Processing, and Packing of Organic Products.*

   (a) **Quantity and Schedule.** During the term of this Agreement, Milos shall purchase enough certified organic raw materials to produce, after July of each calendar year during the term of this Agreement (each a "**Crop Year**"), the quantity of Organic Products ordered by OI on or before December 10th of the previous Crop Year. By October 31st of each year Milos shall deliver to OI pricing on all the Organic Products for sale to OI for the upcoming season, which will be based on a written preliminary estimation made by OI of its annual quantity needs for the Organic Products for the next Crop Year (the "**Forecast**"). By no later than December 10th. of each year, OI shall submit a final written purchase order to Milos for all Organic Products being ordered by OI during the next Crop Year (an "**Annual PO**"), which will be for the exact quantities as in the Forecast for the same Crop Year. OI will have until January 31st. of each Crop Year the right to adjust its intended purchase quantities via written notice to Milos, but in no event shall such adjustments be more than a ten percent (15%) variation from the quantities specified in the Annual PO

   It is agreed that the quantity of Organic Products ordered by OI in each Crop Year will be at least 25% higher than the quantity in the previous Crop Year as long as Milo's pricing and quality remains competitive and as long as market conditions allow this growth rate

   (b) **Price.** Prices for Milos' production, packing, and processing, including all costs relating to plates and labeling, of the Organic Products are CIF East and West Coast ports and are detailed in EXHIBIT "B" attached hereto. However, Milos shall also arrange for ground transportation and ensure delivery to OI's designated warehouses, the cost of

1

*and incorporated herein by this reference,*   which shall be billed to OI and added to the applicable invoice.

(c) **Invoicing and Payment Terms.** OI will pay Milos a $50,000 prepayment towards inventory being purchased against the Annual PO one day after the signing of this Agreement and another $25,000 prepayment on March 31st, 2006. OI will deduct $75,000 off the first set of invoices received from Milos..

At any time following OI's delivery to Milos of the Annual PO, OI shall obtain its then-current needed quantities of Organic Products by submission to Milos of purchase orders for Organic Products that will be withdrawn from the master Annual PO (the "**Periodic POs**"). Milos shall invoice OI for the Organic Products ordered via the Periodic POs. Payments shall be made by OI to Milos within ten (10) days from the date such Organic Products clear US ports for delivery to OI, and OI shall receive an additional *two percent (2%)* discount off the invoice price for such Organic Products . Notwithstanding the other provisions of this Section 1(c), OI shall have paid Milos in full for those quantities of Organic Products reflected in the Annual PO *(as adjusted in OI's discretion pursuant to Section 1.(a) of this Agreement)* by no later than August 31 of the following Crop Year if any Organic Product still remains at Milos and has not yet been shipped. *For the purpose of this section, "payment" by OI shall mean — wiring of money to Milos' bank account.*

(d) **Miscellaneous.** Milos hereby agrees that it will process and pack the Organic Products under a third-party private label. Milos hereby agrees that *it shall not, directly or indirectly,,* use the recipes used to produce the Organic Products in order to produce other products for the US market without the prior *express written* approval by OI.. OI further agrees to manage the sale of all Organic Products. Milos hereby agrees that all Organic Products shall be processed and packed by Milos in accordance with the recipes/formulae developed by or for OI and provided to Milos from time to time (the "**Specifications**").

2. **Samples.** Milos shall submit, free of any charges to OI, such samples of the Organic Products as OI may reasonably require, so that OI may assure itself that the Organic Products are being packed and processed in accordance with the Specifications. OI shall notify Milos within five (5) working days of receiving the samples for evaluation if, in OI's view, any Organic Product does not conform to its particular Specifications. Should OI reject any Organic Product or samples thereof as not conforming to the Specifications, OI shall provide samples of the rejected Organic Product to Milos for its inspection. If Milos disputes OI's judgment as to whether the particular Organic Product conforms to the Specifications, the matter in dispute shall be resolved by submitting a sample of such product for analysis to a mutually agreed upon independent third party certified laboratory. The findings of such third party shall be final and binding on the parties, and the party whose opinion does not prevail shall bear the cost of the independent evaluation and report.

3. **Non-Conforming Organic Product.** If Milos fails to produce any Organic Product in accordance with its Specifications, and such non-conforming Organic Product is, in the view of OI, unmerchantable (but only if the independent laboratory mentioned in section

2



2 finds such *Organic Product to be non-conforming*), OI shall have no obligation to purchase such non-conforming Organic Product from Milos. In such case, Milos shall not deliver the non-conforming Organic Product to OI, if such non-conforming Organic Product has not already been delivered. OI shall make no payment to Milos therefor. If in the view of OI, the non-conforming Organic Product is merchantable, OI and Milos shall agree, in good faith, upon the price at which OI shall purchase the non-conforming Organic Product from Milos.

4. *Sole and Exclusive Agency*

Throughout the performance of this Agreement, Milos shall not sell any Organic Products to any other person or entity than OI for export to the United States and Canada. Therefore, Milos will refer all inquires it receives within the United States and Canada for Organic Products to OI and Milos will not solicit customers for Organic Products within the United States and Canada. Under no circumstances whatsoever shall Milos sell any products to OI's existing customers including those customers being solicited by OI for new sales.

Throughout the performance of this Agreement, OI shall not buy any Organic Products made from or based on tomatoes from any other person or entity other than Milos, except if Milos fails to supply OI Organic Products in the quality, quantity and in the specification ordered by OI and except for Prinir (where OI currently has a contract to buy organic retail products) and Tomatek (where OI buys industrial organic tomato products under contract.

If OI can not sell all the industrial diced + paste for Milo's, then OI will notify Milos as to which customers OI has made offers to. And OI would allow Milos to offer product to non-OI customers through mutual agreement.

5. *Warranties*. Milos agrees, represents, and warrants to OI as follows:

(a) Each Organic Product processed by Milos pursuant to this Agreement shall be processed in compliance with all applicable Israeli laws and regulations as well as applicable US state and federal laws and regulations., including, but not limited to: the California Organic Products Act of 2003 and regulations adopted pursuant thereto; the federal Organic Foods Production Act of 1990 and regulations adopted pursuant thereto; the federal Food, Drug and Cosmetics Act and regulations adopted pursuant thereto; including Juice Hazard Analysis and Critical Control Point (HACCP) regulations set forth in 21 CFR Part 120 and current Good Manufacturing Practices (CGMPs) set forth in 21 CFR Part 110.

(b) Each Organic Product processed by Milos pursuant to this Agreement shall: (i) pass without objection in the trade and conform to Specifications; (ii) be fit for the ordinary purposes for which such Organic Products are used; (iii) run, within the variations permitted by this Agreement, of even kind, quality and quantity within each unit and among all units involved; (iv) be adequately contained, packaged and labeled as the Agreement requires; and (e) conform to the promises or affirmations of fact made on its container or label, if any.

3




(c) Each Organic Product processed by Milos pursuant to this Agreement for export to the United States and Canada shall be processed in compliance with the laws and regulations of the United States and Canada, and shall be labeled by Milos as "Intended for Export" on the outside of the shipping package. It shall be the responsibility of Milos to determine the applicable laws and regulations of the United States and Canada, and Milos hereby agrees, represents, and warrants that it shall undertake and discharge this responsibility.

6. *Indemnification.* Milos agrees to indemnify and hold OI, its successors, assigns and customers harmless from all liability, loss, suits, damages, claims, demands and expenses, including attorneys' fees, incurred or sustained by OI, its successors, assigns or customers by reason of (a) the failure of the Organic Products to conform to the warranties in this Agreement, (b) injuries to persons or property caused by non-conformation of the Organic Products to the warranties in this Agreement or defects therein, (c) actual or alleged infringement of any rights of third parties by reason of the sale or use of the Organic Products, and (d) any breach of this Agreement by Milos. Such indemnity shall be in addition to any other remedies provided by law, and shall survive acceptance of the Organic Products and payment therefore by OI. Further, Milos agrees to maintain a general liability insurance policy and an umbrella insurance policy with a loss limit of not less than two (2) million dollars per occurrence, and to name OI as an additional insured on such policy.

OI agrees to indemnify and hold Milos, its successors, assigns and customers harmless from all liability, loss, suits, damages, claims, demands and expenses, including attorneys' fees, incurred or sustained by OI, its successors, assigns or customers by reason of (a) the failure of the Organic Products to conform to OI's warranties in this Agreement, (b) injuries to persons or property caused directly by non-conformation of the Organic Products to OI's warranties in this Agreement, (c) actual or alleged infringement of any rights of third parties, including but not limited to infringement of any third party's intellectual property rights relating to recipes or formulae developed by OI for the Organic Products and (iv) any breach of this Agreement by OI which directly causes injury to person or property. Such indemnity shall be in addition to any other remedies provided by law. Further, OI agrees to maintain a general liability insurance policy and an umbrella insurance policy with a loss limit of not less than two (2) million dollars per occurrence, and to name Milos as an additional insured on such policy.

7. *Disclaimer of Additional Warranties.* MILOS AND OI HEREBY DISCLAIM ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ALL IMPLIED WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE, AND ALL WARRANTIES THAT MIGHT OTHERWISE ARISE FROM ANY REPRESENTATIONS MADE BY OR ON BEHALF OF MILOS OR OI WITH RESPECT TO EACH ORGANIC PRODUCT. THIS DISCLAIMER INCLUDES ALL WARRANTIES THAT MIGHT OTHERWISE

4

ARISE FROM ANY DESCRIPTION OF ANY OF THE ORGANIC PRODUCTS OR THEIR QUALITY.

8. **_Risk of Loss._** Milos shall bear the responsibility of any changes in product quality which occur during or after the Organic Product has left the Milos facility providing it has been handled and stored properly unless the cause of any such change in product quality is directly a result of the Specifications provided by OI. Milos' obligation for any loss for which it is responsible under this Agreement shall be to reimburse OI for all direct losses suffered as a result of the rejected or recalled Organic Product.

9. **_Marketable Title._** Milos warrants and agrees that OI shall have good and marketable title to the Organic Products, free and clear of liens, liabilities, encumbrances and charges made, done or suffered by Milos, except for liens arising in favor of Milos under application of law from any failure of OI to pay Milos any amounts that OI is obligated to pay to Milos hereunder. OI agrees that Milos may file and record such liens as Milos deems necessary to protect its interest in payment for the Organic Products, and hereby irrevocably appoints Milos to be OI's true and lawful attorney-in-fact to execute, file, and record on OI's behalf, any documents required to be filed by OI to evidence Milos' interest in the Organic Products. Milos shall provide copies of such documents to OI immediately upon filing with applicable agencies or authorities.

10. **_Confidential Information._** As used in this agreement, the term "Confidential Information" means proprietary techniques and information that OI or Milos ("The Disclosing Party") has or will develop, compile, or own, which is disclosed to the other party ("The Receiving Party") pursuant to this Agreement. Confidential Information includes information disclosed by The Disclosing Party (including its employees, agents, and independent contractors) or its customers to The Receiving Party during the term of this Agreement, but also information (including inventions or formulas) developed by Milos for OI's benefit. Confidential Information is to be broadly defined and includes: (a) all information that has or could have commercial value or other utility in the business in which The Disclosing Party or its customers are engaged or in which they contemplate engaging; and (b) all information that, if disclosed without authorization, could be detrimental to the interest of The Disclosing Party or its customers, whether or not such information is identified as Confidential Information. By example and without limitation, Confidential Information includes all information on The Disclosing Party's products, product specifications, product formulations, pricing strategies, customers, customer contacts, customer requirements, growers, grower contacts, grower capabilities and limitations, processes, formulas, trade secrets, inventions, discoveries, improvements, research or development test results, specifications, data, know-how, formats, marketing plans, business plans, strategies, forecasts, unpublished financial information, budgets, proposals, projections, and customer and supplier agreements, including the terms of this Agreement. Confidential Information does not include (i) any information that at the time of disclosure or thereafter is generally available to and known by the public (other than as a result of an unauthorized disclosure by either party), (ii) is developed by The Receiving

5

Party without reliance on the Confidential Information, or (iii) is or was available to The Receiving Party on a non-confidential basis from a source other than The Disclosing Party who, insofar as is known to The Receiving Party after reasonable inquiry, is not prohibited from transmitting the information to The Receiving Party by contractual, legal or fiduciary obligation to The Disclosing Party.

11. *Nondisclosure of Confidential Information.* The Receiving Party promises and agrees that neither it nor any of its directors, officers, employees, agents, assigns, or affiliates shall use (other than for the purpose of this Agreement) or disclose to any other person or entity, directly or indirectly, either during or after termination of this Agreement, any Confidential Information unless specifically authorized in writing by The Disclosing Party. If The Disclosing Party gives The Receiving Party written authorization to make any disclosures, The Receiving Party shall do so only within the limits and to the extent of that authorization. The Receiving Party acknowledges that the unauthorized use or disclosure of Confidential Information may be highly prejudicial to the interests of The Disclosing Party or its customers, an invasion of privacy, or an improper disclosure of trade secrets. The Receiving Party further acknowledges that such unauthorized use or disclosure of Confidential Information constitutes unfair competition with The Disclosing Party. The Receiving Party agrees that it shall take every reasonable precaution to protect the confidentiality of Confidential Information, including, without limiting the generality of the foregoing, all steps taken by The Receiving Party to maintain the confidentiality of its own confidential information. Upon termination of this Agreement, there shall be no further use by The Receiving Party of any Confidential Information. The Receiving Party shall return all such Confidential Information in its custody, control or possession, and all information in its custody, control or possession based on, derived from, or utilizing Confidential Information, to The Disclosing Party within thirty (30) days of the termination of this Agreement. Both parties specifically agree that The Receiving Party's obligations to protect and return Confidential Information shall survive termination of this Agreement, and that the provisions of this Section 11 may be enforced through specific performance and/or injunctive relief in any court having jurisdiction as long as the confidential information is confidential.

12. *Third Party Information.* Milos and OI represent and warrant that this Agreement does not result in the breach of any agreements with or duties to any third party. Milos and OI will not disclose to each other or use on the other party's behalf any confidential information or other intellectual property belonging to others, and will indemnify and hold harmless the other party from and against any claims arising out of or relating to any allegation that Milos or IO (as the case may be) has used or disclosed the confidential information or intellectual property of another, and/or that the other party has in any way interfered with an economic relationship or prospective economic relationship involving Milos or IO and a third party.

13. *Nonsolicitation.* Milos agrees that, in order to protect OI's Confidential Information and to prevent any unfair competition, Milos shall not, during the term of this agreement and for a period of eighteen (18) months thereafter, directly or indirectly solicit

מצב:גופן לא מודע

6

or attempt to solicit any business of selling organic products from any OI customers, including (but not limited to) those customers set forth on in EXHIBIT "C" attached hereto and incorporated herein by this reference. Milos further agrees that, in order to protect OI's Confidential Information and to prevent any unfair competition, Milos shall not, during the term of this agreement and for a period of eighteen (18) months thereafter, sell, produce, deliver or distribute, or offer to sell, produce, deliver or distribute any organic ingredient or Organic Products to any OI customer without OI's express written authorization. OI and Milos specifically agree that Milos' obligations in this Section 13 shall survive termination of this Agreement, and that the provisions of this Section 13 may be enforced through specific performance and/or injunctive relief in any court having jurisdiction.

14.  *Additional Products and/or Services.*  Any additional product or other related services performed hereunder by Milos for OI, and not specifically provided for herein, shall be requested in writing by OI from time to time and shall be charged at such rates and paid upon such terms as shall be agreed upon in writing by OI and Milos.

15.  *Books and Records.*  Milos shall maintain accurate and complete records such as may be required with respect to all aspects of its production and movement of Organic Products hereunder and shall make the same available for inspection and copying by OI, upon reasonable notice, during regular business hours. Without limiting the generality of the foregoing, Milos shall maintain all records required by any law or regulation, including the organic and kosher certification requirements. Milos shall comply with all organic and kosher certification audit requirements.

16.  *Status as Independent Contractors.*  With respect to performance under this Agreement, the parties acknowledge that their relationship is that of independent contractors. Neither party shall have the right to bind the other in relationships with third parties. Nothing herein shall be construed or interpreted to create a joint venture or any other relationship between the parties.

17.  *Term and Termination.*  The initial term of this Agreement shall be three (3) years from the date hereof. Notwithstanding the following provisions of this Section 17, subsequent to the first anniversary of this Agreement, either party may terminate this Agreement upon one hundred eighty (180) days prior written notice to the other. In the absence of such notice, this agreement will automatically renew for additional 3 year terms. This Agreement may also be terminated by either party in the event of a breach of the terms hereof. The non-breaching party shall provide the party who has breached this Agreement with written notice of such breach immediately upon the discovery of such breach by the non-breaching party, and said notice shall specify the nature and extent of such breach. Upon receipt of such notice, the breaching party shall have thirty (30) days to cure the breach. If the breach referred to in the notice is not cured within such thirty-(30-) day period, this Agreement shall terminate upon the expiration of such period. In the event of termination of this Agreement, OI shall be entitled to take possession, at



7

Milos's expense, of any Organic Products in Milos's possession, all of which Milos shall warehouse solely for the benefit of OI.

18. *Force Majure.* Neither party to this Agreement shall be responsible or liable in any way for any default in the performance hereof arising directly or indirectly from causes beyond the control of such party, including but not limited to fire, flood, war, embargo, strike, boycott, labor difficulty, accident, explosion, riot, insurrection, shortage of fuel, mechanical breakdown, acts of God, expropriation of plant by government authority, crop shortages, or for any failure of performance of any kind caused in any way by federal, state or other governmental authority.

19. *No Waiver.* The provisions of this Agreement may not be waived, altered, amended or repealed, in whole or in part, except with the written consent of both parties to this Agreement. The failure or omission by either party to insist upon or enforce any of the terms of this Agreement shall not be deemed a waiver of such terms unless the waiver is in writing and signed by the party against whom such waiver is sought to be enforced. Waiver of one term is not a waiver of any other term. Waiver of any term on any one occasion is not a waiver of the same term on any other occasion.

20. *Assignment.* Neither party to this Agreement may assign this Agreement or delegate any of its duties or obligations or assign any of its rights hereunder. This Agreement shall be binding on, and shall inure to the benefit of, the parties to it and their respective permitted successors and assigns.

21. *Severability.* It is intended that each section of this Agreement shall be viewed as separate and divisible, and in the event that any section (or subpart thereof) shall be held to be invalid, the remaining sections shall continue to be in full force and effect.

22. *Attorneys Fees.* If either party to this agreement undertakes litigation or arbitration against the other party arising out of or in connection with this agreement, the successful or prevailing party or parties will be entitled to recover from the other party, as an element of his costs of suit, and not as damages, reasonable attorney's fees, arbitration costs, and court costs incurred.

23. *Mediation Required.*

In the event of a dispute, claim or difference arising out of or in connection with this contract, the parties agree to first enter into non-binding Mediation through the International Mediation and Arbitration Center (IMAC) located at its offices in London, England under its Mediation Rules current at the date the dispute is referred to Mediation. The Mediation will take place in London, England. If the parties resolve the dispute, claim or difference at Mediation or thereafter by written settlement agreement, in the event of a breach of the settlement agreement, it can be entered as a Judgment in any court of competent jurisdiction, without regard to any conflicts of law, in any country in the world including but not limited to the United States and Israel. The costs of the Mediation shall be borne by the parties equally.

8

24. *Arbitration.* If any dispute, claim or difference between the parties is not resolved by Mediation through IMAC, it shall be determined through neutral binding arbitration in England under IMAC. The parties will select one Arbitrator from the IMAC panel. The Application for a judicial order of attachment, receivership, injunction or other provisional remedy shall not constitute a waiver of the right to arbitrate under this provision. Any Order, Decision or Award by the appointed Arbitrator can (without regard to any conflicts of law), in the event of non-compliance, be entered as a Judgment in any court of competent jurisdiction in any country of the world including but not limited to the United States of America and Israel.

25. *Applicable Law.* This Agreement shall be governed by and interpreted in accordance with the laws of the United States.

26. *Venue.* Any litigation arising out of Sections 23 and 24 of this Agreement or a Judicial Review of the Arbitration proceeding or an Application for a provisional remedy as provided in Section 24 of this Agreement or any Application to enforce the parties right to mediate or arbitrate under this Agreement shall take place in the appropriate court of the United States of America.

27. *Notice.* All notices, requests, consents, demands, and other communications required or given under this Agreement shall be in writing and shall be deemed to have been duly given: (1) on the date of service if served personally on the party to whom notice is given, or if sent by telecopies (with a copy also mailed to such party), in either case with written confirmation of receipt; or (2) within Seventy-Two (72) hours after mailing, if mailed to the party to whom notice is to be given by (i) first class mail, registered or certified or Express Mail, postage prepaid, or (ii) Federal Express, DHL World-Wide Courier Express, or other recognized courier service, charges prepaid, and in either case, properly addressed to the party at the address set forth below or any other address that any party may designate by notice to the other.

| If to OI: | If to Milos: |
| --- | --- |
| Attn.: Joseph J. Stern, President<br>Organic Ingredients, Inc.<br>335 Spreckels Dr., Suite F.<br>Aptos, CA 95003 | Attn: Shlomo BenDavid<br>Milos XXx<br>Address<br>WESTERN GALILEE 22821<br>ISRAEL |

IN WITNESS WHEREOF, the parties have caused their corporate names to be affixed hereto as of the dates set forth below:

"OI":

9

Organic Ingredients, Inc., a California Corporation

By: _Joseph J. Stern, Pres._
JOSEPH J. STERN, President

Dated: February 16, 2006

"MILOS":

Milos XXX

By: _[signature]_                SHLOMO BEN-DAVID

Dated: February 16, 2006

10

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
Milos (1989) Ltd., an Israeli Corporation

## DEFENDANTS
SunOpta Global Organic Ingredients, Inc., a California Corporation

(b) County of Residence of First Listed Plaintiff  Israel
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Matthew C. Mickelson
Law Offices of Matthew C. Mickelson
16055 Ventura Blvd., Ste. 1230
Encino, CA 91436   (818) 382-3360

Attorneys (If Known)

C08 02109 PVT

E-FILING

ADR

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [X] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [X] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury — Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | PROPERTY RIGHTS | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | PERSONAL PROPERTY | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 690 Other | | [ ] 490 Cable/Sat TV |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | LABOR | SOCIAL SECURITY | [ ] 810 Selective Service |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [X] 190 Other Contract | | [ ] 385 Property Damage Product Liability | | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | PRISONER PETITIONS | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS | | [ ] 740 Railway Labor Act | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 442 Employment | Habeas Corpus: | [ ] 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | [ ] 894 Energy Allocation Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 540 Mandamus & Other | IMMIGRATION | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities – Other | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – Alien Detainee | | |
| | | | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. section 1332

Brief description of cause:
Open book account, account stated, goods sold and delivered/tendered, breach of contract

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $ $174,644.58, atty fees
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)
- [ ] SAN FRANCISCO/OAKLAND
- [X] SAN JOSE

DATE  4/16/08

SIGNATURE OF ATTORNEY OF RECORD